**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| JMB MANUFACTURING, INC., d/b/a SUMMIT FOREST PRODUCTS CO., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:11-cv-0065-TWP-WGH |
| CHILD CRAFT, LLC a/k/a SOUTHERN INDIANA FURNITURE COMPANY, INC. a/k/a CHILD CRAFT, INC. a/k/a CHILD LINE a/k/a CHILD CRAFT a/k/a CHILD CRAFT INDUSTRIES; HARRISON MANUFACTURING, LLC, G.E.G. OF INDIANA, LLC, GATEWAY MANUFACTURING, INC., DOUGLAS K. GESSFORD, WILLIAM S. SUVAK, and MARK SUVAK, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ENTRY ON MOTION TO DISMISS**

Plaintiff JMB Manufacturing, Inc., d/b/a Summit Forest Products Co. ("JMB"), is a wholesaler of unfinished and partially finished wood products for children's furniture and other applications. This case stems from a series of shipments of wood products in 2008 and 2009 from JMB to Defendant Child Craft, LLC ("Child Craft"), a manufacturer of finished and partially finished children's furniture. After Child Craft allegedly failed to pay for the shipments, JMB sued a multitude of persons and entities, including: (1) Child Craft; (2) Harrison Manufacturing, LLC ("Harrison Manufacturing"), the successor-in-interest to personal property interests formerly held by Child Craft; (3) G.E.G. of Indiana, LLC ("G.E.G."), the successor-in-interest to real estate interests formerly held by Child Craft; (4) Gateway Manufacturing, Inc. ("Gateway"), a "subsidiary or associated corporation" of Child Craft that

also manufactures finished and partially finished furniture; (5) Douglas Gessford ("Mr. Gessford"), the owner and manager of Child Craft, Harrison Manufacturing, G.E.G., and Gateway; (6) William Suvak, the President and shareholder of Child Craft; and (7) Mark Suvak, the Vice President and shareholder of Child Craft.

JMB has brought three distinct causes of action:  Count 1, a failure to pay breach of contract claim, brought against Child Craft and Gateway; Count 2, a constructive fraud claim, brought against William Suvak, Mark Suvak, Mr. Gessford, and Gateway; and Count 3, a criminal conversion claim, brought against Child Craft, Gateway, William Suvak, Mark Suvak, Mr. Gessford, Harrison Manufacturing, and G.E.G.

Now, five of the Defendants – Child Craft, Harrison Manufacturing, G.E.G., Gateway, and Mr. Gessford (collectively, "Movants") – have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss most of the claims brought against them. Specifically, Harrison Manufacturing, G.E.G., Gateway, and Mr. Gessford have moved to dismiss all of the claims against them, while Child Craft has moved to dismiss the criminal conversion claim.  Notably, Child Craft concedes that JMB has stated an adequate breach of contract claim against it.  Thus, for organizational purposes, it is worth noting that if the Court were to grant the present motion in its entirety, only a handful of claims would remain: (1) the breach of contract claim against Child Craft; (2) the constructive fraud claim against the Suvaks; and (3) the criminal conversion claim against the Suvaks.  For the reasons set forth below, Movants' 12(b)(6) Motion to Dismiss (Dkt. 12) is **GRANTED** without prejudice.

## I. <u>LEGAL STANDARD</u>

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Bielanski v. County of Kane*,

550 F.3d 632, 633 (7th Cir. 2008) (citations omitted).  However, the allegations must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted).  To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  When ruling on a motion to dismiss, a court generally should only consider the complaint's allegations. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (citation omitted).  However, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

## II. DISCUSSION[1]

As discussed, there are three claims at issue: (1) breach of contract; (2) constructive fraud; and (3) criminal conversion.  The Court will address each in turn.

### A.     Breach of Contract

The essential elements of any breach of contract claim are: (1) "the existence of a contract," (2) "the defendant=s breach thereof," and (3) "damages."  *Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991, 995 (Ind. Ct. App. 1998).  JMB's complaint essentially alleges two separate contract claims against Gateway.  First, JMB alleges that Gateway failed to pay for an order that it placed with JMB on August 6, 2008 (Compl. ¶ 14); JMB attached the actual

---

[1] Given the various allegations against the various parties, the Court believes it would be easiest to collapse the background and the discussion into a single section.

purchase order to its complaint as "Exhibit A." Second, JMB alleges that Gateway, along with Child Craft and Mr. Gessford, agreed to pay one-half of the shipping costs for a specific JMB shipment, but apparently failed to do so (Compl. ¶ 24); JMB attached the related freight bill to its complaint as "Exhibit G." Gateway has moved to dismiss both breach of contract claims, contending that JMB's complaint does not demonstrate the existence of an enforceable contract between Gateway and JMB.

With respect to the first allegation, relating to the August 6, 2008 purchase order, the Court begins by reviewing the purchase order itself. Specifically, the purchase order names both Gateway and Child Craft. Significantly, though, the purchase order states that it was "from" Child Craft and should be "ship[ped] to" Child Craft. Along similar lines, JMB sent all relevant invoices directly to Child Craft. (Dkt. 1-2, 1-3, and 1-4.) Movants contend that Gateway's name was inexplicably included on the purchase order in error. However, Movants also concede that this issue strays outside the parameters of Rule 12(b)(6); therefore, Movants argue that even if Gateway ordered products from JMB through the purchase order, it clearly did so on Child Craft's behalf. In other words, Gateway was acting as Child Craft's agent.

"An agent is one who acts on behalf of some person, with that person's consent and subject to that person's control. *Oil Supply Co., Inc. v. Hires Parts Service, Inc.*, 726 N.E.2d 246, 248 (Ind. 2000) (citation omitted). Importantly, it is well-settled that an agent cannot be held personally liable for a contract made on behalf of a principal, unless the agent consents to being bound, exceeds its authority, or fails to disclose the identity of the principal. *Kelly v. Levandoski*, 825 N.E.2d 850, 858 (Ind. Ct. App. 2005) (citation omitted); *Fiederlein v. Boutselis*, 952 N.E.2d 847 (Ind. Ct. App. 2011) ("Where an agent acted within the scope of the agent's

4

authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent.").

The Court agrees that, in view of JMB's complaint and the purchase order, Gateway was, at most, acting as Child Craft's agent. Accordingly, Gateway can only be held liable if it consented to be bound, exceeded its authority, or failed to disclose Child Craft's identity. JMB's complaint fails to allege any of these exceptions to the general rule regarding agent liability.

JMB's only counter-argument is that it can hold Gateway liable because it is a "subsidiary or associated corporation of Child Craft." But this argument is untenable. Regardless of the precise nature of their relationship, Gateway and Child Craft are unquestionably separate and distinct entities. And, generally, courts cannot hold one entity liable for the wrongs of the other. Although there are exceptions to this rule, JMB has not made any such allegations that would warrant piercing the corporate veil; nor has it pled any facts that would raise the specter of such a possibility. *See Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 462-63 (Ind. Ct. App. 2000) (discussing factors to be considered in determining whether one corporate entity is the mere instrumentality or adjunct of another). Accordingly, JMB's complaint, in its current form, fails to state a plausible breach of contract claim against Gateway arising out of the August 6, 2008 purchase order.

JMB's second breach of contract allegation against Gateway, relating to shipping costs, also contains a fatal flaw: that is, JMB did not allege that Gateway's promise to pay shipping costs was in writing. Under the Uniform Commercial Code's ("UCC") statute of frauds, a contract "for the sale of goods" for the price of $500.00 or more is unenforceable unless it is contained in writing. Ind. Code § 26-1-2-201.

JMB counters that the UCC doesn't apply because the agreement at issue pertained to "shipping," not "goods."  But this argument appears to be a red herring.  Where a transaction is a mixture of goods and services, Indiana courts employ the "predominant thrust" test.  *See Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 554 (Ind. 1993).  Under this test, a mixed transaction is governed by the UCC if its "predominant facts, [its] thrust, [its] purpose" is the sale of goods, even if the goods are accompanied by the incidental rendition of a service.  *Id.* (quotation omitted).  In embracing this test, the Indiana Supreme Court expressly rejected the "bifurcation approach," in which the service-component of the transaction can be divorced from the good-component of the transaction.  *Id.*  Thus, the predominant thrust test employs an "all or nothing" approach to transactions that are a hybrid of goods and services: they are either governed by the UCC (because they are primarily goods-based) or they are governed by common law (because they are primarily service-based).  Where, as here, the thrust of the transaction pertained to the acquisition of goods, the UCC statute of frauds applies.  Given JMB's failure to allege that Gateway's promise was contained in writing, JMB's related breach of contract claim, in its current form, is deficient.

## B.    Constructive Fraud[2]

JMB alleges that Gateway and Mr. Gessford have committed constructive fraud. "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud."  *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (quotation omitted).  The elements of constructive fraud are:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material

---

[2] JMB "concedes that sufficient elements of actual fraud were not contained in the Complaint." (Dkt. 22 at 3-4.) Thus, the Court will only analyze JMB's constructive fraud claim.

misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Id.* (quotation omitted).

The Court begins by analyzing the allegations against Gateway.  Specifically, JMB alleges that Gateway committed constructive fraud by ordering products from JMB, having them shipped to Child Craft, and stating that Child Craft was the purchaser (Compl. ¶ 34).  Presumably, this allegation is predicated on the purchase order that was the subject of JMB's breach of contract claim against Gateway, described above.  However, this allegation strikes the Court as implausible.  After all, the purchase order expressly stated that it was from Child Craft and that the goods should be shipped to Child Craft; moreover, JMB sent all related invoices to Child Craft.  And, tellingly, there is nothing else in the complaint that gives rise to a plausible inference that Gateway owed JMB a duty for purposes of a constructive fraud claim.  Finally, even assuming the existence of a duty, this claim still fails on the fifth element, as it is altogether unclear what advantage, if any, Gateway would gain by ordering products that Child Craft ultimately received.

With respect to the constructive fraud claim relating to Mr. Gessford, JMB alleges that Mr. Gessford accepted a shipment of JMB's products and then sold them to third parties after falsely claiming they were defective (Compl. ¶ 31).  According to JMB, Mr. Gessford's actions induced it to spend $14,000.00 in bringing an international lawsuit against its overseas wood distributor, which it had to stop once JMB discovered that Mr. Gessford had sold the products as non-defective (Compl. ¶ 32-33).

Movants argue that JMB's constructive fraud claim against Mr. Gessford is inadequate for multiple reasons.  Most notably, JMB makes no allegation that Mr. Gessford owed it a duty.

To assert a claim of constructive fraud under Indiana law, a plaintiff must prove "the existence of a duty by virtue of a special relationship between the parties...". *Mudd v. Ford Motor Co.*, 178 Fed. Appx. 545, 547 (7th Cir. 2006) (applying Indiana law). Normally, the "special relationship" is "fiduciary or confidential" in nature. *Id.* (citations omitted); *see also Lycan v. Walters*, 904 F. Supp. 884, 898 (S.D. Ind. 1995) ("For a confidential relationship to exist, it is essential that there be a dominant and a subordinate party..."). Notably, duties do not arise out of garden-variety "arms-length, contractual arrangement." *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992); *see also Remmers v. Remmington Hotel Corp.*, 56 F. Supp. 2d 1046, 1058 (S.D. Ind. 1999) (no duty for purposes of constructive fraud claim given plaintiff's ability to bargain and his experience; "the Court is not persuaded that circumstances exist that would create an injustice if the law does not find a fraud"); *Sofaer Global Hedge Fund v. Brightpoint, Inc*, 2011 WL 2413831, at *11 (S.D. Ind. June 10, 2011) (same).

That said, Indiana law recognizes that a confidential or fiduciary relationship is not essential where conditions are inherently likely to create injustice, such as "when actions or statements mislead the complaining party, and the actions or statements are of a character which would prevent inquiry." *McDaniel v. Shepherd*, 577 N.E.2d 239, 242 (Ind. Ct. App. 1991) (emphasis added). This latter principle has been applied in the context of the buyer-seller relationship. *Schmitt v. Beekay Dev*elopment *LLC*, 2008 WL 2691071, at *6 (S.D. Ind. July 3, 2008) ("With respect to the buyer-seller relationship, constructive fraud may arise where one party is in the unique possession of knowledge not possessed by the other and thus enjoys a position of superiority over the other.") (citation and quotations omitted). JMB argues that Mr. Gessford had "superior knowledge" because he was in possession of the product at the time he alleged it was defective.

8

Upon closer review, however, JMB's "superior knowledge" argument falters for two reasons. First, the buyer-seller principle espoused by JMB is inapposite, given that Mr. Gessford, personally, was not in a buyer-seller relationship with JMB. Second, JMB had access to the same information as Mr. Gessford because JMB had a right to inspect the goods to determine if they were defective. *See* Ind. Code §26-1-2-515(a) ("either party on reasonable notification to the other and for the purpose of ascertaining the facts and preserving evidence has the right to inspect, test and sample the goods including such of them as may be in the possession or control of the other"). Importantly, "[a] party does not have 'superior knowledge' ... where the information at issue is readily available to the complaining party." *Schmitt*, 2008 WL 2691071, at *6 (citation omitted). Simply stated, JMB had the right to inspect its product, and thus assess the veracity of Mr. Gessford's defectiveness allegations. Thus, JMB has failed to plead allegations that give rise to a plausible inference that Mr. Gessford owed it a duty for purposes of a constructive fraud claim.

## C.     Criminal Conversion

Finally, JMB alleges that all of the Movants – Child Craft, Gateway, Mr. Gessford, Harrison Manufacturing, and G.E.G. – committed criminal conversion by exercising unauthorized control over JMB's products. It is well-settled that a criminal conversion claim requires proof that the defendant acted with knowledge or intent. *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1166-67 (Ind. Ct. App. 2008) (citing Ind. Code § 35-43-4-3); *City Wide Paving, Inc. v. M&I Marshall & Isley Bank*, 2011 WL 3207045, at *2 (July 27, 2011) ("A *mens rea* element is included in the proof necessary to establish criminal conversion."). JMB's complaint, however, is bereft of allegations that Movants acted with the requisite intent. Moreover, it is worth noting that the criminal conversion allegations appear to be little more than

breach of contract allegations recast in a different form.  Importantly, Indiana courts have held that criminal conversion claims are not available when they are inseparable from breach of contract claims. *French-Tex Cleaners*, 893 N.E.2d at 1168 ("the Indiana legislature did not intend to criminalize bona fide contract disputes.").  For these reasons, JMB's criminal conversion claim, in its current form, fails.

### III. <u>CONCLUSION</u>[3]

For the reasons set forth above, Movants' 12(b)(6) Motion to Dismiss (Dkt. 12) is **GRANTED**.  JMB has requested leave to amend its complaint under Fed. R. Civ. P. 15(a)(2), and the Court is not yet persuaded that JMB's efforts to amend will be futile. *Cf. Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663 (7th Cir. 2007) (district court did not abuse its discretion in denying plaintiff leave to file <u>fourth</u> amended complaint).  Therefore, dismissal is **GRANTED WITHOUT PREJUDICE**.  JMB shall have twenty-one (21) days from the date of this entry to file an amended complaint.  Movants shall have fourteen (14) days from the date of the amended complaint to file a responsive pleading.


SO ORDERED.


Dated:  10/12/2011
_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[3] Given the Court's ruling, it need not address arguments relating to the timeliness of JMB's response in detail.

DISTRIBUTION:

Joshua William Casselman
RUBIN & LEVIN, PC
jcasselman@rubin-levin.net

John C. Hoard
RUBIN & LEVIN, PC
johnh@rubin-levin.net

Gordon D. Ingle
FAITH INGLE SMITH LLC
gdilaw@faithinglesmith.com

S. Chad Meredith
RANSDELL AND ROACH, PLLC
chad@ransdellroach.com

W. Keith Ransdell
RANSDELL AND ROACH, PLLC
keith@ransdellroach.com

John C. Roach
RANSDELL & ROACH, PLLC
john@ransdellroach.com

Jeffrey A. Savarise
FISHER & PHILLIPS LLP
jsavarise@laborlawyers.com