UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JMB MANUFACTURING, INC. d/b/a | ) | |
| SUMMIT FOREST PRODUCTS COMPANY | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-65-TWP-WGH |
| | ) | |
| CHILD CRAFT, LLC, | ) | |
| G.E.G. OF INDIANA, LLC, | ) | |
| GATEWAY MANUFACTURING, INC., | ) | |
| DOUGLAS K. GESSFORD, | ) | |
| DARYL EASON, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| HARRISON MANUFACTURING, LLC, | ) | |
| f/k/a CHILD CRAFT, LLC | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROB BIENIEAS, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

## ENTRY ON DEFENDANTS' AND COUNTERCLAIM-PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

Plaintiff JMB Manufacturing, Inc., d/b/a Summit Forest Products Company ("Summit

Forest"), sued Defendants, Child Craft, LLC , along with G.E.G. of Indiana, LLC ("G.E.G."),

Gateway Manufacturing, Inc. ("Gateway"), Harrison Manufacturing, LLC, Douglas K. Gessford

("D.K. Gessford"), and Daryl Eason ("Mr. Eason") (collectively, "Defendants"), alleging breach

of contract and conversion, and seeking to pierce the corporate veil.  Defendant Harrison

Manufacturing, LLC (f/k/a Child Craft, LLC) ("Child Craft")[1] counterclaimed against Summit Forest and its President, Rob Bienias ("Mr. Bienias") (collectively, "Counterclaim-Defendants"), claiming breach of contract, breach of implied warranties, and negligent misrepresentation. Defendants moved for summary judgment, Child Craft moved for partial summary judgment as the Counterclaim- Defendants moved for summary judgment.  For the reasons set forth below, Defendants' motion (Dkt. #89) is **GRANTED in part** and **DENIED in part**, Child Craft's motion (Dkt. #91) is **GRANTED in part** and **DENIED in part**, and Counterclaim-Defendants' motion (Dkt. #135) is **DENIED**.

# I.  BACKGROUND

## A.    Authority to Act

Mark and Bill Suvak owned Child Craft, Inc. until 2008, when, after being financially crippled from a 2004 flood, they sought a buyer.  D.K. Gessford, Mr. Eason, and Carol Gessford were co-owners of Gateway.  The Gateway principals formed G.E.G. to purchase Child Craft, Inc.'s real estate.  Along with Kevin Romenesko ("Mr. Romenesko"), these parties formed Child Craft, LLC so as to purchase Child Craft, Inc.'s trademark, inventory, and other assets.  Mr. Romenesko was later bought out.

During all times relevant to this dispute, D.K. Gessford served as President and Chief Executive Officer ("CEO") of Child Craft.  Mr. Romenesko served as the Chief Financial Officer ("CFO") through 2009.  Bill Suvak served as Vice President and Chief Design Officer, and Mark Suvak served as Vice President, Chief Operating Officer ("COO"), and CFO after 2009.

---

[1]  Harrison Manufacturing, LLC, the sole Counterclaim-Plaintiff, referred to itself as "Child Craft" in its counterclaim. Dkt. #63 at 15.  Therefore, for the purposes of this motion, "Child Craft" refers to both Harrison Manufacturing, LLC and Summit Forest's business partner, the former Child Craft, LLC.

**B.** **Formation of Business Relationship and Contract**

In August 2008, Child Craft and Summit Forest entered into a contract, under which Child Craft purchased sub-assemblies for cribs and case goods from Summit Forest. Gateway was listed as the corporate entity on the first purchase order, but this was corrected before the first order was shipped. Mr. Bienias, as Summit Forest President, would act as Child Craft's broker to find a suitable sub-assembler of wood products for Child Craft's Vogue line of children's furniture. Child Craft, in turn, would manufacture the unfinished and semi-finished wood products into finished baby furniture. In September 2008, Summit Forest identified PT Cita, an Indonesian company, as a supplier. Mr. Bienias and D.K. Gessford visited PT Cita's facility in Indonesia.

PT Cita representatives informed D.K. Gessford and Mr. Bienias that it could properly develop sub-assembly parts for the Vogue line. In August 2008, after receiving Child Craft's first purchase order, Summit Forest ordered sub-assemblies from PT Cita. PT Cita shipped six containers of sub-assemblies, five by sea and one by expedited air, between December 2008 and April 2009.

The first container of goods was shipped by expedited air, and the cost was to be split with Summit Forest. Thereafter, Child Craft was generally obligated to pay the cost of goods and shipping. Upon receipt of any non-conforming goods, Child Craft had the option to either reject the goods or accept and rework them. If Child Craft elected to try to rework any defective goods into salable finished products, Summit Forest agreed to pay Child Craft for all supplies and $30.00 per man-hour of labor.

C.    **Breach of Agreement**

Almost immediately, Child Craft and Summit Forest experienced problems with PT Cita. After initially informing Mark Suvak that the first container would probably ship from Indonesia about October 7, 2008 and arrive about November 15, 2008, Mr. Bienias learned on October 3 and November 3, 2008 that PT Cita was delaying the first, second, and third containers.  Mark Suvak expressed immediate concern that these delays would not give Child Craft enough time to create finished products for its customers.  Therefore, Mr. Bienias arranged for air shipment of the first container to ensure the cribs would ship from Indonesia by the end of November 2008. Child Craft received the first shipment, containing cribs, and the second shipment, containing case goods, between December 9 and 12, 2008.

There were serious problems with the sub-assemblies, especially high moisture content with the crib wood and veneer problems with the case goods.  Child Craft and Summit Forest communicated extensively about the problems in December 2008 and January 2009.  Child Craft properly rejected the first shipment of 90 cribs as non-conforming and attempted to salvage the goods from the remaining shipments into finished products.  However, the finished products it attempted to sell were either returned by retailers or were rejected by retailers outright.

Mark Suvak promptly notified Mr. Bienias that drying the sub-assemblies failed to make them into salable products.  Nevertheless, he subsequently urged Mr. Bienias to get an estimated time of arrival from PT Cita on the third container and agreed to continue with future orders.

On January 13, 2009, Child Craft asked Summit Forest to stop shipment of further goods until Child Craft could assure that the goods were suitable.  Mr. Bienias communicated this message to PT Cita, but PT Cita continued to ship defective products.  Child Craft agreed to

4

reduce its rework rate for shipments received before January 31, 2009, from $30.00 per man-hour to $36.00 per case.  Ultimately, Child Craft incurred $53,532.62 in rework charges.

Summit Forest invoiced Child Craft for all shipments except for the first shipment of 90 cribs.  Consistent with its position that it would not pay until it was sure the cribs were usable, Child Craft refused payment to Summit Forest no later than January 27, 2009 and never paid thereafter.  On February 20, 2009, Mark Suvak sent an e-mail to Mr. Bienias stating that all cribs had been rejected and that Child Craft had effectively and timely communicated the product problems, requesting that a container of replacement cribs be shipped immediately, and reiterating its refusal to pay until usable cribs were delivered.

Child Craft never delivered non-defective cribs.  Unable to sell any of the Vogue furniture line to retailers, Child Craft ceased operations on June 19, 2009.  Thereafter, in July 2009, D.K. Gessford and Mark Suvak sold approximately $41,692.52 of the subassemblies provided by Summit Forest to Foundations Worldwide, Inc. ("Foundations").  On January 4, 2010, Mr. Bienias asked Child Craft to dispose of the components, since he could not pay for storage. In early 2010, Child Craft transferred some of the product to a storage facility owned by Gateway Manufacturing, Inc. ("Gateway"), where some were destroyed or used as kindling material by Gateway, but some are still stored.  The remaining Summit Forest components stored at Child Craft were destroyed before the Child Craft building was auctioned.

## C.    Claims raised in the pleadings

Summit Forest has sued the Defendants for breach of contract (Plaintiff's Amended Complaint Count I), to pierce the corporate veil against D.K. Gessford and Mr. Eason as the controlling members of the LLC defendants (*id*. at Count II), and for criminal conversion.  *Id*. at Count III.  Child Craft filed a counterclaim against Summit Forest, alleging breach of contract,

5

breach of the implied warranties of merchantability and fitness for particular use, and negligent misrepresentation.   Mr. Bienias was sued individually for negligent misrepresentation. Jurisdiction and venue are proper in this court.  28 U.S.C. §§ 1332, 1391(b).  Additional facts will be supplied as necessary.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).  The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.  *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  Stated differently, only disputes over material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will preclude the entry of summary judgment.  *Id*. at 248.  When determining whether a genuine issue of material fact exists, the Court views the record and all reasonable inferences in the light most favorable to the nonmoving party.  *Id*. at 255.

### III.  DISCUSSION

**A.      Defendants' motion for summary judgment (Dkt. 89)**

Defendants make several arguments as to why they are entitled to summary judgment on Summit Forest's claims, including:  (1) that Summit Forest's breach of contract claim fails because conforming goods were never delivered; (2(a)) Indiana law does not permit a conversion claim; (2(b)) Summit Forest cannot establish the elements of conversion; and (3) there is no basis for piercing the corporate veil or applying the *alter ego* doctrine.

**1.      Whether Summit Forest can sustain a breach of contract claim**

Defendants argue Summit Forest's breach of contract claim cannot be sustained because Summit Forest never delivered conforming goods in a timely manner.  They contend that Child Craft never received non-defective cribs.[2]  Therefore, Defendants argue Child Craft was justified in rejecting all of the goods under the Uniform Commercial Code ("UCC"), and they owe none of the $110,816.28 Summit Forest alleges.  *See* Ind. Code §§ 26-1-2-301, -601.

Summit Forest responds that Child Craft used all of the goods except for the first 90 cribs, for which Summit Forest does not allege breach of contract.  Child Craft's reworking of the goods, shipping to retailers, and selling goods to Foundations were acts inconsistent with the seller's ownership, and thus purportedly constituted acceptance under Article 2 of the UCC.  *See* Ind. Code § 26-1-2-606(1)(c).  By accepting the goods and reworking them, Summit Forest argues, Child Craft contractually waived any claim it might have had against Summit Forest for failing to perfectly tender goods.  *See* Ind. Code § 26-1-2-719; *see also Caudill Seed & Warehouse Co., Inc. v. Rose Seeding & Sodding, Inc.*, 764 F. Supp. 2d 1022, 1031 (S.D. Ind. 2010).  According to Summit Forest, once the goods were accepted and the window in which a

---

[2] Mr. Bienias admitted that he knew the other furniture was worthless to Child Craft without the cribs; i.e., conforming cribs were at the heart of the bargain.

buyer can timely revoke had passed, Child Craft was liable for the sales price regardless of whether the goods were conforming.  *See* Ind. Code § 26-1-2-607(1-2).

Summit Forest also claims that, assuming Child Craft accepted the goods, it failed to revoke its acceptance in a timely manner.  Revocation of acceptance must happen "before any substantial change in the condition of the goods which is not caused by their own defects."  Ind. Code § 26-1-2-608(2).  Failure to do so deprives a buyer of a breach of contract action.  Ind. Code §§ 26-1-2-607(3), -608(2), -714(1).  Even after Mark Suvak concluded in late December 2008 that the goods were probably not salvageable, he urged Mr. Bienias to find out when PT Cita was making its next shipment.  Summit Forest claims Mark Suvak did not refuse payment until January 27, 2009, and did not reject all cribs until February 20, 2009.

The Court simply finds too many issues of disputed fact to entitle Defendants to summary judgment on this issue.  It is not clear, for example, whether Child Craft, by accepting, reworking, and selling some of the defective goods, effectively waived its remedies under the perfect tender rule.  *See* Ind. Code § 26-1-2-601.  Mark Suvak's statements as to the quality of the various shipments are sufficiently ambiguous and the Court cannot conclude that, as a matter of law, Child Craft was rejecting outright each and every shipment.  It is also not clear whether the February 20, 2009 e-mail, even if it is considered a confirmatory memorandum, *see* Ind. Code § 26-1-2-201(2), constituted timely rejection or revocation of acceptance for all shipments. Finally, Child Craft's selling of some of the sub-assemblies to Foundations in July 2009 suggests that Defendants may be liable for at least some of the contract price sued on by Summit Forest. For these reasons, Defendants' motion for summary judgment on breach of contract is denied.

**2.      Whether Summit Forest can sustain a claim for conversion**

**a.      Whether Indiana law permits a conversion claim in a contract dispute**

Summit Forest accuses Defendants of conversion by selling and destroying the goods without the consent of Summit Forest or remitting payment. In response, Defendants contend the dispute between the parties is a simple *bona fide* contract dispute, and that Indiana law does not permit conversion claims in these instances. To allow otherwise, Defendants claim, would allow a plaintiff to "up the ante" by repackaging a breach of contract claim as one for conversion. *See French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167-68 (Ind. Ct. App. 2008). Summit Forest does not seek punitive damages, making the conversion damages sought—the value of the goods—identical damages to those for breach of contract. *See, e.g.*, *Auburndale St. Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 894-95. Since the issues are inextricably intertwined, Defendants argue Summit Forest cannot pursue a conversion claim.

Summit Forest, however, counters that the contract dispute subsumes the issue of conversion only for Child Craft. It claims goods were transferred to Foundations and Gateway and some of the goods were burned by Gateway for kindling purposes. Summit Forest argues these acts were all done without their consent and without payment to Summit Forest; as such, these acts expose Gateway and potentially G.E.G. (as the real estate owner) to potential conversion liability. If the corporate veil is pierced on the breach of contract claim, individual owners of Gateway and G.E.G. (D.K. Gessford and Mr. Eason) could be liable as well.

Aside from the burning of some products for kindling by Gateway, Summit Forest has presented no evidence of acts independent of the underlying contract dispute which could be reasonably construed as conversion, nor has it presented any evidence that G.E.G. was involved in the burning of the goods. Summit Forest also has not presented, and the Court cannot find, any case law suggesting that this or a similar set of facts would justify the extraordinary step of allowing a conversion claim to proceed based on the same underlying facts as a breach of

contract claim. Therefore, before examining the merits of Summit Forest's claims against Gateway, D.K. Gessford and Mr. Eason, summary judgment is granted for all other Defendants.

>    **b.      Whether Summit can establish a claim for conversion against Gateway, D.K. Gessford, and Mr. Eason**

To make an actionable claim for conversion against parties who were not signatories to the underlying contract, Summit Forest would have to prove that the remaining Defendants "knowingly or intentionally exerted unauthorized control over [Summit's] property." *French-Tex Cleaners, Inc.*, 893 N.E.2d at 1166 (citing Ind. Code § 35-43-4-3). Defendants claim that, even assuming *arguendo* a conversion claim would be recognized in Indiana, Summit Forest cannot prove Gateway—or, by extension, D.K. Gessford or Mr. Eason—exercised such control.

Specifically, Defendants argue that Summit Forest took almost no action after Child Craft rejected the goods. It neither demanded their return nor gave Child Craft instructions on what to do with the goods beyond asking Child Craft to dispose of the components. In doing so, Summit Forest allegedly abandoned its interest in the property, which gave Child Craft or any other party the right to appropriate it and affords them a complete defense to a conversion claim. *Right Reason Publ'ns v. Silva*, 691 N.E.2d 1347, 1351 (Ind. Ct. App. 1998). Further, Defendants argue that because Child Craft's initial control of the goods was lawful and Summit Forest never demanded return of the goods, Child Craft believed the goods were abandoned and was never on notice that their exercise of control was no longer authorized. Since an unqualified demand for return of goods is an element of a conversion claim, *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983), Defendants could not have had the requisite *mens rea*.

Summit Forest briefly counters that Defendants were on notice that the burning and selling of some goods was not authorized because it had demanded payment by invoicing Child Craft. Summit Forest further claims it was not required to seek return of goods because Mr.

Bienias believed the goods were already converted, destroyed, or being reworked by Child Craft. However, there is no Indiana case law suggesting that a conversion claim's demand requirement can be waived.  Summit Forest therefore cannot meet a key element for a conversion claim even if Child Craft was knowingly exercising unauthorized control.  Summary judgment must be granted to Gateway, D.K. Gessford and Mr. Eason on the conversion claim as well.

       **3.**       **Whether there is a basis for piercing the corporate veil or applying the *alter ego* doctrine**

           **a.**       **Piercing the corporate veil**

Summit Forest claims that D.K. Gessford, Mr. Eason, Gateway, G.E.G., and Harrison made a sham of the corporate forms to, among other things, promote fraud and injustice against Summit Forest and the corporate veil should therefore be pierced to hold D.K. Gessford, Mr. Eason, G.E.G., Harrison and Gateway jointly and severally liable for the amount due Summit Forest from Child Craft.  Child Craft counters that since there was no fraud perpetrated or corporate form disregarded and none of the reasons for piercing exists, the individual defendants should not be held personally liable.

"In general, a corporate officer or employee is not individually liable for the corporation's actions, and an office or corporate status, even a very senior one, does not in itself expose an individual to personal liability."  *Comm'r, Dep't of Enviro. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556, 559 (Ind. 2001).  However, in some instances courts determine there is no practical difference between the officers and shareholders and the corporation, or the officer or shareholder had an additional connection with the corporation's tort beyond her position.  In those cases, courts can pierce the corporate veil and subject shareholders and corporate officers to personal liability. *Escobedo v. BMH Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004); *Roake v. Christensen*, 528 N.E.2d 789, 791-92 (Ind. Ct. App. 1998).

The party seeking to pierce must show by a preponderance of evidence that the corporate form was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that not piercing would constitute fraud or injustice.  *Escobedo*, 818 N.E.2d at 933.  There are eight practices that most often result in a court deciding to disregard the corporate form:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Anderson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).  Finally, the moving party must show a causal connection between misuse of the form and the harm suffered by the movant.  *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282 (Ind. Ct. App. 2012).

Summit Forest raises four grounds as to why the corporate form should be disregarded and the respective Defendants held personally liable.

### i.        Asset transfer to Foundations Worldwide

Summit Forest accuses D.K. Gessford and Mr. Eason of making fraudulent representations in asset transfer to Foundations, claiming that Foundations was obtaining the goods with outright and good marketable title when in fact they were encumbered by Summit Forest's remaining interest.  Defendants claim they made no fraudulent statements and there was no statement actually made to Summit Forest in connection with the transfer to Foundations.  Thus, Defendants argue there was no connection between the alleged fraud and harm Summit Forest suffered.  Summit Forest did not respond to Defendants' allegation that there was no causal connection, so the Court treats Summit Forest as having abandoned this claim.  *See, e.g.*, *Rangel v. Schmidt*, 2011 WL 5570691, *14, (N.D. Ind., Nov. 16, 2011) ("It is well established

that when a party fails to respond to an issue raised in a summary judgment motion, the issue is deemed abandoned and waived.").

    **ii.**       **Transferred assets to G.E.G. and Gateway without records or consideration**

Next, Summit Forest claims that Child Craft transferred assets to Gateway and G.E.G. without formal records of the transfer and that Gateway and G.E.G. did not pay consideration to Child Craft for the asset transfer. This alleged failure to observe corporate formalities and comingling of assets harmed Summit Forest since it still had not been paid by Child Craft for the goods when they were transferred. Defendants rejoin that the assets were never sold to Gateway or G.E.G.; they were merely stored in Gateway facilities (which sat on land owned by G.E.G.). Since Summit Forest has designated no evidence that the assets were actually transferred, the court cannot pierce the corporate veil on this basis.

    **iii.**       **D.K. Gessford and Mr. Eason made fraudulent asset transfers**

Summit Forest claims that, while Child Craft was taking orders for Summit Forest's products, D.K. Gessford and Mr. Eason began secret negotiations to sell Child Craft's assets to Gateway and Foundations in order to leave it insolvent and judgment-proof. By withholding payment from these sales Child Craft prejudiced Summit Forest. In response, Child Craft contends the last shipment of Summit Forest goods was on April 28, 2009, while Child Craft did not try to sell its assets until it ran out of money on June 19, 2009. Moreover, Defendants argue Child Craft's selling its assets as it wound down is not misbehavior, but rather indicative of insolvency.

The Court agrees with Defendants. Summit Forest has designated no evidence that Gateway or G.E.G. was sold any of Child Craft's assets or that D.K. Gessford and Mr. Eason sold any of Summit Forest's products to Foundations at less than fair market value. More

importantly, Summit Forest has produced no evidence that the asset transfers were done with the intent to defraud Summit Forest and, in fact, Defendants agree that income from selling products to Foundations is deducted from its counterclaim damages.  In the absence of such fraud, the Court will not take the extraordinary step of piercing the veil on this ground.

### iv.      D.K. Gessford and Mr. Eason made a sham of the corporate form

Summit Forest accuses D.K. Gessford and Mr. Eason of controlling Child Craft's corporate form to carry out personal wishes, making a sham of the corporate form and blurring the line between Gateway, G.E.G., and Child Craft out of existence.  Summit Forest claims Child Craft borrowed money from its landlord G.E.G. to finance operating expenses, and after becoming insolvent, Gateway acquired some of Child Craft's property to offset some of the debts Child Craft owed Gateway.  Gateway not only provided engineering and other services for Child Craft, it was listed as the corporate entity on Child Craft's purchase order it submitted to Summit Forest.  Finally, Summit Forest claims that Mr. Eason, D.K. Gessford, and Carol Gessford owning equal shares in all three companies supports its argument that the individual defendants could be held personally liable.  *See Konrad Motor & Welder Serv., Inc. v. Magnetech Indus. Services, Inc.*, 973 N.E.2d 1158, 1164-65 (Ind. Ct. App. 2012).

Defendants counter that Summit Forest has offered no evidence in support of its argument that the principals made a sham of the corporate form.  However, D.K. Gessford's deposition testimony presents a disputed issue of material fact as to whether the individual defendants comingled assets when Gateway assumed some of Child Craft's assets to offset debts after Child Craft's insolvency.  Defendants have not explained why Gateway was allowed this seemingly favored position *vis-à-vis* other creditors.  If the trier of fact finds Defendants breached their contract with Summit Forest, and thus Summit Forest was entitled to Child Craft

income as offset, Summit Forest would be Child Craft's creditor, and it is possible Summit Forest was harmed as a result of the comingling.  Harm and clear causal connection would satisfy key requirements to pierce the corporate veil.  *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282 (Ind. Ct. App. 2012).  Therefore, the Court declines to hold that, as a matter of law, D.K. Gessford and Mr. Eason could not be held personally liable for this reason. Defendants' summary judgment motion is hereby **DENIED**.

> **b.      Whether the *alter ego* doctrine can be applied**

In addition to piercing the corporate veil, a court may also use the corporate *alter ego* doctrine to disregard the corporate form and hold individuals personally liable.  The corporate identity can be disregarded "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation."  *Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1191 (Ind. Ct. App. 2002) (internal quotation omitted). This is done "to avoid the inequity that results when one corporation uses another corporation as a shield from liability."  *Konrad*, 973 N.E.2d at 1165 (internal quotation omitted).  Factors in considering whether to apply the *alter ego* doctrine are:  (1) similar corporate name; (2) common principle corporate officers, directors, and employees; (3) similar business purposes; and (4) same office locations, telephone numbers, and business cards.  *Oliver*, 769 N.E.2d at 1192.

As discussed *supra*, Summit Forest claims that D.K. Gessford and Mr. Eason were operating Gateway as the mere *alter ego* of Child Craft to escape liability for Child Craft's debts by transferring Summit Forest's goods to Gateway without consideration.  Summit Forest lists the following facts in support:  the identical ownership across Child Craft, G.E.G., and Gateway; Gateway being listed as the corporate entity on Child Craft's purchase order; and Gateway making independent use of the Summit Forest products.   Child Craft responds that D.K.

Gessford was the only common officer or employee, Gateway is based in Kentucky whereas Child Craft was based in Indiana, all three LLCs were adequately capitalized, and Child Craft is not attempting to continue operations as either Gateway or G.E.G.

The listing of Gateway as the corporate entity on Child Craft's purchase order and D.K. Gessford, Child Craft's President and CEO, serving as an officer and employee of Gateway suggests the possibility of Gateway existing as Child Craft's *alter ego*.   However, Defendants assert that listing Gateway was a clerical error, which Child Craft corrected on the amended purchase order it sent to Summit Forest before the first shipment.  The amended purchase order had specific information to fulfill Summit Forest's purchase from PT Cita, so Summit Forest was not harmed.  Defendants rightly point out that in the absence of a causal connection between the alleged misuse of the corporate form and harm suffered, an *alter ego* claim cannot be sustained. *CBR Event Decorators, Inc.*, 962 N.E.2d at 1282.  Since Summit Forest did not allege any harm from this listing, and there are no other grounds that suggest Gateway may have been a sham continuation of Child Craft, Summit Forest cannot pierce the corporate veil under a theory of corporate *alter ego*.

### 4.    Summary

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED** as it pertains to Summit Forest's breach of contract claim and piercing the corporate veil on the basis of comingling funds.  It is **GRANTED** as it pertains to Summit Forest's criminal conversion claim or piercing the corporate veil for any other reason.

## B.    Child Craft's motion for partial summary judgment (Dkt. 91)

With respect to its Motion, Child Craft advances claims that it is entitled to:  (1) summary judgment for rework charges in the amount of $53,532.62; (2) partial summary judgment as to

16

liability on its breach of contract claim; and (3) partial summary judgment on its breach of implied warranty claim.

### 1.    Rework Charges

Child Craft asserts the contract language unambiguously obliges Summit Forest to deliver conforming goods, and Mr. Bienias has admitted that Summit Forest failed to deliver non-defective cribs.  Child Craft claims it is similarly undisputed that Summit Forest agreed to pay Child Craft $30.00 per man-hour, plus any parts and material costs, for any rework of the defective products.  This rate was later modified by agreement for work done prior to January 31, 2009, but was unchanged for goods received on or after that date.  Summit Forest counters that because Child Craft reworked the goods rather than rejecting them, it accepted the goods and was obligated to pay for them.  Ind. Code § 26-1-2-607(1-2).  In failing to do so, Summit Forest claims that Child Craft became the first party to breach the contract, and it lost the right to recover rework damages resulting from Summit Forest's failure to deliver conforming goods. *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986).[3]

The Court agrees with Child Craft that they incurred $53,532.62 in legitimate rework charges.[4]  However, Child Craft reads too broadly its buyer's remedies.  Child Craft may only engage in resale in the same manner as an aggrieved seller if it had rejected or rightfully revoked acceptance of the goods.  Ind. Code § 26-1-2-711(3).  As stated *supra*, there are disputed issues of material fact as to whether Child Craft accepted the goods and, if so, whether it properly revoked acceptance.  If it did either of those actions, then Child Craft's assessment of damages is

---

[3] *Licocci* cited 17 AM. JUR. 2D CONTRACTS § 365, which was subsequently deleted.  17A AM. JUR. 2D CONTRACTS Correlation Table (2013).  However, the principle that the party who breached first cannot complain if the other party does not perform has not been invalidated in Indiana law.

[4] Child Craft concedes that it partially offset its losses by selling some of the non-conforming goods to Foundations Worldwide.  Therefore, Child Craft's recovery would be offset by approximately $41,692.52, the sale price to Foundation.

accurate.  If it failed to, it would still be liable to Summit Forest for the sale price, offset by the rework charges and any damages it could recover via breach of warranty.  *Id*. at -714(2).  This dispute means the Court must deny summary judgment to Child Craft for the claimed amount.

      **2.**      **Issue of liability for the remainder of Child Craft's breach-of-contract claim**

Child Craft claims that it has the right to bring a breach-of-contract counterclaim regardless of whether it accepted the goods.  It further argues that Summit Forest's failure to ever deliver conforming goods means there is no dispute of material fact that Summit Forest breached its contract.  Child Craft is correct that it is well-established that even if it accepts and does not properly reject contract goods, it may still bring a breach of contract claim.  *See* Ind. Code §§ 26-1-2-607(3), -714.  It is undisputed that the first shipment of 90 cribs was non-conforming, and Child Craft prevails on the issue of liability for that shipment.  However, there is a material dispute over the remaining cribs.  It is undisputed that Summit Forest never delivered non-defective cribs.  However, it is not clear as a matter of law whether Child Craft used the goods for a reasonable time prior to acceptance to determine defects, accepted the remaining goods, properly revoked its acceptance, or promptly notified Summit Forest of its breach.  Ind. Code §§ 26-1-2-606(1), 607(3)(a).  Failure to do so would mean Child Craft would be liable for the contract sales price on the remaining goods.  Ind. Code § 26-1-2-607(1-2).  Child Craft's motion for partial summary judgment on the issue of liability is therefore **GRANTED** for the first shipment of 90 non-conforming cribs and **DENIED** for subsequent shipments.

      **3.**      **Issue of liability for Child Craft's breach-of-warranty counterclaims**

Next, Child Craft claims that Summit Forest's failure to deliver conforming goods violated the UCC's implied warranties protecting buyers:  merchantability and of fitness for particular use.

### a.     Implied Warranty of Merchantability

The implied warranty of merchantability attaches in every sale of goods under the UCC if the seller is a merchant of those goods.  Ind. Code § 26-1-2-314(1).  It is undisputed that Summit Forest is a merchant in this transaction, which is defined as one dealing "in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker. . . ."  *Id*. at -104(1).  A merchant warrants with each sale that the goods are merchantable, *id*. at -314(1), which means, among other things, that the goods "are of fair, average quality within that description," *id*. at -314(2)(b), and "are fit for the ordinary purposes for which such goods are used."  *Id*. at -314(2)(c).

In this case, Child Craft properly rejected the first shipment of 90 cribs, reworked all the subsequent shipments since they were all defective, and Child Craft could not manufacture the sub-assemblies into salable final products.  Summit Forest therefore has failed to meet the requirements in subsections (b) and (c).  However, it is unclear whether Child Craft ever accepted the goods, and whether Child Craft timely notified Summit Forest of their breach of warranty, a condition precedent to recover under Ind. Code § 26-1-2-607(3)(a).  Even assuming that the December 2008 and January 2009 e-mails were, as Child Craft claims, notifications of breach, Child Craft has not cited any case law suggesting that notification within a certain amount of time constitutes timely notification as a matter of law.  The Court therefore **DENIES** Child Craft's motion for summary judgment for breach of implied warranty of merchantability.

### b.     Implied Warranty of Fitness for a Particular Use

The implied warranty of fitness for a particular use does not arise automatically in a commercial transaction.  Rather, a plaintiff buyer must show that a warranty was created and

there is vertical privity between the buyer and merchant, *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011), which there is in this case.  For a warranty of fitness for particular use to be created, the buyer must show that the "(1) seller . . . had reason to know buyer's particular purpose, (2) that seller must have had reason to believe buyer was relying on seller's skill and judgment, and (3) that buyer in fact had relied on seller's skill and judgment." *Paper Manufacturers Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 881 (N.D. Ind. 1999) (quoting Ind. Code § 26-1-2-315).  Child Craft easily meets the elements, as Summit Forest knew the sub-assemblies were for Child Craft's Vogue line, a top-line product that Child Craft hoped would revitalize the company.  Moreover, Mr. Bienias was obligated to find a suitable supplier for Child Craft's specifications and to ensure Child Craft received defect-free sub-assemblies. Finally, PT Cita manufactured and Summit Forest shipped the defective sub-assemblies, constituting actual reliance by Child Craft.  However, as with the implied warranty of merchantability, it is not clear as a matter of law whether Child Craft timely notified Summit Forest of its breach.  Summary judgment is therefore **DENIED** for Child Craft's breach of implied warranty for particular use claim as well.

### c.    Auxiliary issues

The Court finds it sufficient to deny summary judgment due to uncertainty over timely notification.  However, other issues raised by the parties merit brief comment by the Court. Summit Forest claims that the implied warranties do not attach until a party has accepted and paid for the goods.  While it is generally true that the damage for breach of warranty is the difference between the value of goods accepted and value as warranted, Ind. Code § 26-1-2-

714(2)[5], breach of warranty generally happens at time of tender, not time of acceptance.  *Id*. at -725(2).  Therefore, acceptance has no bearing on liability for breach.  The Court also does not find as a matter of law whether Child Craft's rework option constituted a limitation of Child Craft's remedies for breach of implied warranties.

### 4.    Summary

For the foregoing reasons Child Craft's motion for partial summary judgment is **GRANTED** as it pertains to the first shipment of 90 cribs on its breach of contract claim.  It is **DENIED** as it pertains to its recoverable rework charges, the remainder of its breach of contract claim, and its breach of implied warranties claim.

## C.    Counterclaim-Defendants' Motion for Summary Judgment (Dkt. 135)

Finally, the Counterclaim-Defendants have moved for summary judgment on the issues of negligent misrepresentation and on Child Craft's breach of contract counterclaim.  They also move to dismiss Mr. Bienias from the lawsuit.

### 1.   Negligent Misrepresentation

Child Craft accuses Mr. Bienias of negligent misrepresentation by assuring Child Craft that P.T. Cita's shipment of goods would comply with Child Craft's expectations and that Summit Forest could make timely deliveries of the goods.  Negligent misrepresentation was first recognized in Indiana in 1983, when the Court of Appeals adopted Restatement (Second) of Torts § 552, to permit recovery when a plaintiff suffers loss due to defendant's non-fraudulent misrepresentation.  *Eby v. York-Division, Borg Warner*, 455 N.E.2d 623, 628 (Ind. Ct. App. 1983), *aff'd Passmore v. Multi-Mgmt. Svcs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004).    To meet its burden, Child Craft must show that:  (1) Mr. Bienias supplied false information in guiding

---

[5] "Damages can also be measured by the cost of replacement or the cost of repair."  *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 952 n.4 (citing *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 955–56 (Ind. 2001).

Child Craft in its business transactions; (2) Mr. Bienias "failed to exercise reasonable care or competence in obtaining and communicating the information"; and (3) Child Craft justifiably and detrimentally relied on Mr. Bienias's information.  Restatement (Second) of Torts § 552(1-2).  The Counterclaim-Defendants argue Child Craft cannot meet its evidentiary burden for two reasons:  first, there is no evidence Mr. Bienias made any misrepresentations; and second, even if he did, Child Craft did not justifiably rely on them.

### a.       Whether Bienias made any material representations

During Mr. Bienias and Child Craft executives' visit, PT Cita executives told Child Craft and Mr. Bienias they could work with and properly dry the wood species for the Vogue line, and it is undisputed that Mr. Bienias had no reason to doubt PT Cita's veracity at that point. Counterclaim-Defendants argue that any misrepresentations Mr. Bienias may have made were not relied upon by Child Craft until after contract formation.  Therefore, Child Craft cannot show how Mr. Bienias's statements caused harm, and thus cannot sustain a negligent misrepresentation claim.

Moreover, Counterclaim-Defendants claim that Mr. Bienias never made false representations after formation of the contract.  Rather, his statements regarding the shipping dates, in a series of e-mails between Summit Forest and Child Craft, were merely Mr. Bienias's best guesses based on the information supplied to him by PT Cita.  The shipping schedule was entirely dependent on PT Cita's ability to make the product.  Counterclaim-Defendants conclude that Mr. Bienias never falsely represented that PT Cita could timely deliver goods, and even if he had, the e-mails Mr. Bienias sent to Mark and Bill Suvak informing them of his ongoing difficulties with PT Cita meant there was no justifiable reliance.

22

Child Craft responds that Mr. Bienias's representations that PT Cita could make conforming goods and that Summit Forest agents were inspecting the sub-assemblies in Indonesia to ensure conformity, resulted in detrimental reliance by Child Craft. Specifically, the representations led Child Craft to continue to do business with Summit Forest and PT Cita, rather than attempt to find other suppliers. After the first shipment of defective goods, Mr. Bienias's representations that his agents had inspected the subsequent shipments and found them to be in conformity caused Child Craft to continue to accept the ultimately non-conforming goods. This was particularly important, Child Craft claims, since the contract between Child Craft and Summit Forest was not in effect for a specific length of time or for a minimum amount of product purchased. Thus, even assuming that Mr. Bienias had not made any misrepresentations prior to contract formation, Child Craft still suffered harm due to his post-formation misrepresentations.

Furthermore, Child Craft claims Mr. Bienias once stated in 2008 that PT Cita "was a very good supplier who had a strong and consistent track record of providing quality products." However, the February 2009 e-mails show Mr. Bienias's skepticism that PT Cita could dry the wood properly and that he had waited for months after there were problems before inquiring whether PT Cita actually could perform the job Summit Forest asked it to do. Moreover, on several occasions, Mr. Bienias told Child Craft that Summit Forest agents had inspected the PT Cita goods, as they were obligated to under contract, and they were conforming. However, all the subsequent goods received were defective, and Mr. Bienias admitted that the inspections were of random items, rather than of all items. Child Craft argues this shows Mr. Bienias misrepresented PT Cita's ability to produce conforming goods and Summit Forest's inspection of the products.

On the first issue—whether Mr. Bienias's post-contract formation misrepresentations could have harmed Child Craft—the Court agrees with Child Craft. Counterclaim-Defendants have offered no evidence that the contract between Summit Forest and Child Craft prevented the latter from contracting with another supplier for subsequent shipments. Therefore, Child Craft may have suffered harm if Mr. Bienias made misrepresentations. On the second issue—whether Mr. Bienias, in fact, made misrepresentations—the Court holds that a reasonable trier of fact could conclude that Mr. Bienias made misrepresentations to Child Craft. We therefore **DENY** Counterclaim-Defendants' motion for summary judgment on that ground.

> **b.     Whether Child Craft justifiably relied on Mr. Bienias's representations**

Counterclaim-Defendants argue that since Mr. Bienias did not have exclusive knowledge of the facts he allegedly misrepresented and Child Craft was not wholly without knowledge of the facts conveyed, Child Craft could not have justifiably relied on any misrepresentations made by Mr. Bienias. Counterclaim-Defendants direct the Court to Child Craft executives' decision to go to Indonesia to ensure PT Cita knew of the importance of on-time delivery and to examine issues of fit and finish with the sub-assemblies, about which they were more expert than Mr. Bienias. Mr. Bienias himself urged Child Craft executives to revisit PT Cita after quality issues with the cribs developed. Also, Child Craft and PT Cita representatives often communicated directly about these issues. Given such opportunity to ascertain the validity of Mr. Bienias's representations, Counterclaim-Defendants argue, Child Craft could not have reasonably relied on these representations.

Child Craft argues the Counterclaim-Defendants misstate its *prima facie* burden, and that it need not show that Mr. Bienias had exclusive knowledge at the summary judgment stage; rather, justifiable reliance is usually a matter for the trier of fact. *Jeffrey v. Methodist Hosps.*,

956 N.E.2d 151, 157-58 (Ind. Ct. App. 2011). Child Craft further claims it had no way of knowing whether PT Cita had used the desired wood species previously, if it could meet Child Craft's quality expectations for the Vogue line, and that PT Cita was a strong, consistent, and quality-minded supplier. Since Child Craft and PT Cita had no previous relationship, and Summit Forest was the intermediary between them, Mr. Bienias had superior knowledge as to his initial misrepresentations. Given Mr. Bienias's education and experience, it felt justified in relying on his subsequent representations that Summit Forest agents had inspected the subsequent PT Cita goods to be shipped, and that those goods were in conformity.

The Court agrees with Child Craft. Counterclaim-Defendants cite several cases in support of its argument that defendants can be liable for negligent misrepresentation only if the facts were within defendants' exclusive knowledge and plaintiffs were without equal opportunity to ascertain the facts.[6] However, such a requirement has never been adopted in Indiana.[7] Moreover, there are clear disputes over what facts Child Craft had access to during and after its representatives' visit to Indonesia, and to what extent, if any, Summit Forest's intermediary function and Mr. Bienias's knowledge and experience made Child Craft's reliance justifiable. Indiana courts have traditionally held that justifiable reliance is a fact-sensitive inquiry to be resolved by the judge or jury, *Jeffrey*, 956 N.E.2d at 157-58, and the Court must **DENY** Counterclaim-Defendants' motion for summary judgment on this issue.

**Whether Mr. Bienias can be held personally liable**

---

[6] *B&M Linen Corp. v. Kannegiesser USA Corp.*, 679 F. Supp. 2d 474, 484 (S.D.N.Y. 2010); *Guernsey Petroleum v. Data General Corp.*, 359 S.E.2d 920, 924 (Ga. Ct. App. 1987); *O'Brien v. Noble*, 435 N.E.2d 554 (Ill. 1982).

[7] While the Court in *Craig v. ERA Mark Five Realtors* cites the *O'Brien* holding, the information relied on by plaintiffs in that case was a matter of public record, and even then, the trial court made specific factual findings and conclusions of law. *Craig*, 509 N.E.2d 1144, 1146, 1148 (Ind. Ct. App. 1987).

In Count III of the Amended Counterclaim, Child Craft sued Mr. Bienias individually along with Child Craft.  The Court has discussed extensively the facial validity of Child Craft's claim in an earlier entry[8], and the law for piercing the corporate veil *supra* in the present entry; the Court will not rehash those discussions.  Counterclaim-Defendants ask again that Mr. Bienias be dismissed from the case since "there are no issues of material fact to support [a negligent misrepresentation claim].  Without the tort . . . there is no tort to which Ron Bienias could have personal connection."  (Dkt. #148 at 13).  Since the Court has denied Counterclaim-Defendants' motion for summary judgment on Child Craft's negligent misrepresentation claim, and Child Craft alleges that Mr. Bienias made all of Summit Forest's misrepresentations, Mr. Bienias could still be held personally liable.  *Roake*, 528 N.E.2d at 791-92 (Ind. Ct. App. 1998).  The Court **DENIES** Counterclaim-Defendants' motion to dismiss Mr. Bienias from the case.[9]

### 2.   Whether Child Craft's breach of contract claim can be sustained

Counterclaim-Defendants claim that since Defendants/Child Craft accepted all the goods and failed to pay, it is undisputed that they were the first to breach the contract.  Child Craft counters that since Summit Forest admits it never delivered conforming goods, Counterclaim-Defendants cannot receive summary judgment on Child Craft's breach of contract claim.  As discussed *supra*, the issue of "who breached first" cannot be resolved in favor of either party at this stage.   For the same reasons Summit Forest and Child Craft's motions for summary

---

[8] Dkt. #113 at 4-5.

[9] The Court does, however, wish to reiterate that courts are generally loathe to pierce the corporate veil.  Child Craft bears as heavy a burden in attempting to hold Mr. Bienias liable as Summit Forest does in attempting to hold D.K. Gessford and Mr. Eason personally liable.

judgment for their respective breach of contract claims were denied, the Court also **DENIES** Counterclaim-Defendants' motion.

**3.   Summary**

Counterclaim-Defendants' motion for summary judgment is denied for both Child Craft's negligent misrepresentation and breach of contract claims.  Their motion to dismiss Bienias from the case is also denied.

## IV.   <u>Conclusion</u>

For the reasons set forth herein, Defendants' motion for summary judgment (Dkt. #89) is **GRANTED in part** and **DENIED in part**.  Child Craft's motion for partial summary judgment (Dkt. #91) is **GRANTED in part** and **DENIED in part**.  Counterclaim-Defendants' motions for partial summary judgment and to dismiss Mr. Bienias (Dkt. #135) are **DENIED**.  The remaining case shall proceed to trial.

**SO ORDERED.**

Date:   04/10/2013
_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

27

DISTRIBUTION:


Gordon D. Ingle
FAITH INGLE SMITH LLC
gdilaw@faithinglesmith.com

Jeffrey A. Savarise
FISHER & PHILLIPS LLP
jsavarise@laborlawyers.com

John C. Roach
RANSDELL & ROACH, PLLC
john@ransdellroach.com

S. Chad Meredith
RANSDELL & ROACH, PLLC
chad@ransdellroach.com

W. Keith Ransdell
RANSDELL & ROACH, PLLC
keith@ransdellroach.com