# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| HARRISON MANUFACTURING, LLC, ) | |
| ) | |
| Counter Claimants, ) | |
| ) | |
| v. ) | Case No. 4:11-cv-00065-TWP-WGH |
| ) | |
| JMB MANUFACTURING, INC., and ) | |
| RON BIENIAS, ) | |
| ) | |
| Counter Defendants. ) | |

## ENTRY ON DAMAGES

This matter was before the Court for a damages hearing on February 14, 2014. Counter Claimant Harrison Manufacturing, LLC ("Child Craft") appeared by counsel S. Chad Meredith and W. Keith Ransdell. Counter Defendant Ron Bienias ("Mr. Bienias") appeared in person and *pro se*. The Court heard evidence and testimony and now makes the following determination of damages owed to Child Craft.

## I. BACKGROUND

Prior to the instant proceedings, the Court entered default judgment for Child Craft against Counter Defendant JMB Manufacturing, Inc. ("Summit") and dismissed Summit's claims against Child Craft and other defendants. The Court then held a bench trial on Child Craft's negligent misrepresentation claim against Mr. Bienias. Thereafter, the Court entered its Findings of Fact and Conclusions of Law (Dkt. 234) in favor of Child Craft. Detailed facts are contained within that Entry, and further recitation is unnecessary here. The Court found that Mr. Bienias was liable under Indiana law for the tort of negligent misrepresentation. In so finding, the Court determined that: (1) Mr. Bienias, in the course of his profession, supplied false information for

the guidance of others in their business transactions; (2) he failed to exercise reasonable care or competence in obtaining or communicating the information; (3) Child Craft justifiably relied upon the information supplied by Mr. Bienias; and (4) Child Craft suffered a pecuniary loss in an amount to be determined.

The Court then held a damages hearing to determine the extent of Child Craft's pecuniary loss caused by both Summit and Mr. Bienias. At the hearing, Mr. Bienias represented himself *pro se*. The Court heard testimony from Child Craft representative Doug Gessford ("Mr. Gessford"), Mr. Bienias, and Child Craft's damages expert David A. Parks ("Mr. Parks").

## II. **DISCUSSION**

In Indiana, the elements of the tort of negligent misrepresentation are sourced from the Restatement (Second) of Torts § 552. Indiana courts have not explicitly discussed the standard for damages in a negligent misrepresentation case, but the Seventh Circuit in *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 722 (7th Cir. 1994), determined that the corresponding Restatement (Second) of Torts § 552B measure of damages was the appropriate starting point. Section 552B states:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
> > (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> >
> > (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Restatement (Second) of Torts § 552B (1977). Here, Child Craft seeks damages for its losses suffered as a consequence of its reliance on Mr. Bienias' misrepresentations. Child Craft also seeks punitive damages, which the Court addresses separately.

2

### A. Losses Stemming from Mr. Bienias' and Summit's Misrepresentations[1]

The evidence at the hearing established that Child Craft was initially funded in mid-2008 with $1.9 million in starting capital. By February 19, 2009, the company had depleted its available cash and an additional $2 million was contributed to Child Craft. Child Craft expended its capital and ceased operations on June 19, 2009. The Court previously found as a matter of law that Mr. Bienias supplied Child Craft with false misrepresentations that Child Craft relied upon. The Court also found that Child Craft did not receive any usable cribs from Summit and P.T. Cita, and did not sell any product under the Vogue Line. Thus, the measure of damages turns on what losses stemmed from Mr. Bienias' and Summit's negligent misrepresentations.

Mr. Parks' report concluded that because Child Craft did not receive useful products from Summit, Child Craft was unable to fulfill orders from its customers for the Vogue Line, and it suffered lost sales. The lost sales caused by the failure of Summit directly led to the complete loss of Child Craft's business in June 2009. Mr. Parks forecasted what Child Craft's business operations would have looked like had Summit provided useful products by starting with Child Craft's actual financial position as of November 30, 2008. He then forecasted profits and losses, cash flows, and ending balance sheets for December 2008 and annually from 2009 to 2016. He capitalized forecasted annual cash flow in the "terminal period" beyond 2016. To make the forecast, Mr. Parks utilized the November 30, 2008 balance sheet, Child Craft's business plan and own forecast, a variety of information about the children's furniture market, and terms of Child Craft's loans. To reach present value, Mr. Parks utilized a 50% discount rate to account for the risk in the business and the poor economic climate in 2008. He also assumed that cash flow would be restricted as Child Craft paid down its debt.

---

[1] The Court entered default judgment against Summit for Child Craft's negligent misrepresentation and breach of contract claims. The evidence presented at the damages hearing as to Mr. Bienias also goes toward Summit. On the basis of the evidence presented, the Court will make its judgment against Summit in this Entry.

Mr. Parks considered the outstanding loans and initial investments of Child Craft and determined it had suffered a total financial loss of $4,276,919.00 before interest and fees on the loans. Mr. Bienias challenged Child Craft's assertion that his misrepresentations caused the entire financial loss of the company. He specifically argued that Summit provided usable products, Child Craft's business plan was faulty, the company was overcapitalized, and by inference argued that Child Craft depleted its funds irresponsibly. The Court does not agree with Mr. Bienias' characterization of the evidence. On May 28, 2009, Mark Suvak ("Mr. Suvak") of Child Craft and Mr. Bienias exchanged emails. Mr. Bienias asked Mr. Suvak, "how many cribs from second PO may be usable." Bienias Ex. 5. Mr. Suvak responded that, "I think we will get 75% of them to be useable . . . .that is my guesstimate. However, we are spending hours on each unit to get it saleable. There is no way that full price will be paid for the ones that we get to a useable status." Bienias Ex. 5. Mr. Suvak also stated that they had sent out 15 sets of Vogue product. Bienias Ex. 4. The evidence at the hearing established, though, that any sets sent to retailers were never paid for and were not, ultimately, saleable. Child Craft did not recoup any costs from any cribs at any time. Additionally, although Mr. Suvak estimated that Child Craft needed $500,000.00 in starting capital, the company determined it needed a greater amount. The Court will not substitute its own judgment for the business judgment of Child Craft. Therefore, the Court accepts Mr. Parks' valuation of Child Craft's total loss for purposes of determining damages.

Mr. Parks determined that the future cash flows have a present value of $770,069.00, which represents the equity value of Child Craft as of December 1, 2008, immediately prior to Summit's failure to provide products and the misrepresentations from Summit and Mr. Bienias. The Court accepts Mr. Parks' valuation of Child Craft's equity value for purposes of determining

damages. Taking these figures together, Mr. Parks determined Child Craft suffered total losses of $5,046,988.00.

Mr. Parks further identified the amount of lost profits from sales of the Vogue Line. To reach that conclusion he assumed that Child Craft would sell two Vogue cribs per month to each of 100 stores for five years. He also assumed sales for accompanying case goods. The present value of lost profits was valued at $2,277,172.00, using a 20% discount rate. This was a more conservative estimate than Child Craft's forecast, which expected an increase in sales volume. The lost profits is a subset of the total damages of $5,046,988.00, not an additional amount

At the damages hearing, Mr. Bienias challenged Mr. Parks' forecast methodology, which considered a steady rate of sales for a period of five years. Mr. Bienias contended that Mr. Gessford stated in deposition testimony that a product line generally has strong sales for two years before tapering off. Yet this portion of Mr. Gessford's deposition is not before the Court as evidence, and Mr. Gessford did not testify about the life span of a product line at the damages hearing. Additionally, Mr. Bienias raised, and the Court finds compelling, that the economic climate in 2008 and beyond would not support sustained sales as estimated by Mr. Parks. The Court finds it is more reasonable to assume that sales would taper off and not remain constant. Therefore, the Court will reduce the amount of the present value of lost profits by $1 million. As the lost profits are a subset of the total damages, the Court will thus reduce the compensatory damages award by $1 million to $4,046,988.00.

**B.     Punitive Damages**

Child Craft seeks punitive damages in an equal amount to the compensatory damages of $5,046,988.00. Indiana law provides for punitive damages when liability for a tort claim has been established. Such an award "may be awarded upon a showing of willful and wanton

misconduct such that the defendant subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Yost v. Wabash Coll.*, 3 N.E.2d 509, 523 (Ind. 2014) (internal quotation marks omitted). Stated another way, punitive damages may be awarded where "the defendant acted maliciously, fraudulently, oppressively, or with gross negligence *and* the conduct was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other such noniniquitous human failing." *Id.* at 524 (internal quotation marks omitted). However, "punitive damages are not commonplace and are rarely appropriate. . . . The entitlement to punitive damages must be shown by clear and convincing evidence." *Id.*

The Court found in its Findings of Fact and Conclusions of Law that Mr. Bienias supplied Child Craft with assurances, while simultaneously questioning P.T. Cita's ability to meet Child Craft's needs in emails to P.T. Cita and to his lawyer in Indonesia. Child Craft attempted to show at the damages hearing that Mr. Bienias was also aware that Child Craft's business was failing and the future of the business depended upon receiving usable product from Summit and P.T. Cita. However, Mr. Bienias presented evidence that he was not told the company was shutting down until August 2009, approximately two months after Child Craft ceased operations on June 19, 2009. On June 16, 2009, Mr. Bienias emailed Mr. Suvak an invoice for payment, because he believed Child Craft was sending goods to retailers, and never received a response.

The Court finds that this is not the rare case where punitive damages are appropriate. Despite Mr. Bienias' misrepresentations, he did not possess malice or wantonness. Further, Mr. Bienias adequately showed that he had minimal knowledge about Child Craft's financial position and ultimate closure. Thus, he could not have acted with "heedless indifference" to the

6

consequences of his false assurances. Moreover, the Court questions—though does not rule on—whether the award requested would be constitutionally excessive. Mr. Bienias is an individual and Summit is a small corporation owned and operated by Mr. Bienias. A $5 million punitive award goes far beyond what would be necessary to punish and deter future wrongdoing. Ultimately, though, the Court finds that under Indiana law, a punitive award is not appropriate and Child Craft's request for punitive damages is denied.

**C.     Summit's Breach of Contract**

At the damages hearing, Child Craft established that Summit owes Child Craft $11,000.00 for charge backs under the contract. The Court finds that the evidence supports this amount of damages.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** damages against Mr. Bienias and Summit in the amount of $4,046,988.00, jointly and severally. The Court also **GRANTS** damages against Summit in the amount of $11,000.00. The Court **DENIES** Child Craft's request for punitive damages.

**SO ORDERED.**

Date: 04/25/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Ron Bienias
39 Oak Lane
Lemont, Illinois 60439

John C. Roach
RANSDELL & ROACH, PLLC
john@ransdellroach.com

S. Chad Meredith
RANSDELL AND ROACH, PLLC
chad@ransdellroach.com

W. Keith Ransdell
RANSDELL AND ROACH, PLLC
keith@ransdellroach.com